HeNdehsoN, Chief-Justice.
I concur with Judge RtrEFiN in the opinion, that the two solvent executors should not be charged with the bonds delivered by them to Mr. Burton for collection, or for his purchases at the Warren sales ; not only for the reason given.by him, that Mr. Burton has accounted for both in his disbursements for the estate, but because they were not answerable if he had not. ■ Mr. Burton must he viewed, in- the collection of the bonds, either as the agent of Cotton and Jacksony or as their co-executor. If as the first, they can be liable only because the appointment was an improper one, or that they have failed to call him to account in due time. For I presume-it will not be controverted, that executors must sometimes act by agents ; and that this was a proper case for the appointment of an agent (the collection of distant debts). As to the improvidence of the appointment, I will not examine the evidence, to show; that the appointment was not an improvident one; or rather that the plaintiffs cannot allege jt to be so ; for I vi,ew this . as emphatically the case, of Mrs Blount. She,' although in her grave, is the plaintiff. It is for a breach of the confidence repose’d in the defendants by her, that this claim is founded. It is her charities, her benevolences, which it is alleged, have been defeated by it. And therefore there can he no stan-(ja,,{] appealed to with so much propriety, to test the fit-f1 , ■ , . ., , ,. ... ness of an agent to act m the business, as the one which *59 she herself lists left. There is a moral conclusion, by which the plaintiffs are estopped to deny the fitness of the agent. But it is said, that the appointment was improvident, because the per,son selected had the capacity xo assume a character which would render him entirely irresponsible, and that the defendants knew it, and the agent did in fact assume that character ,• that he qualified as one of the executors of the will. It is true that he had that capacity j that the defendants knew it $ and that he has assumed that irresponsible character. But it is equally true, that this capacity was given to him by the real plaintiff, the testatrix, with a view that he might act in this very charge, and in things ofmuch more importance, which he lias done, as her executor, in discharging the trusts of the will. Can this capacity be imputed to the agent, as a disqualification or as rendering ills appointment improvident, and himself unworthy to be entrusted with the collection of a few hundred dollars out of many thousands, which the testatrix contemplated coining into his hands ? Can we impute the capacity which the testatrix gave him of assuming a character, which would invest him with power over the whole estate, as calculated to render him an improper agent io act in a very small paid of it. Much less can one who gave the capacity, or those who claim her charities or bounties, allege it as an act injurious to the estate. The reasoning which would lead to such a conclusion may be systematic, and therefore beautiful. We may admire it, as we are led from one stepping stone, or resting place to another; but in my estimation, it will not stand the test of analysis.
It mokes ni> difference, that the agent may, by proving the will, place it out. of the power of his co-executors to call him to account.
Perflnsnnasox, C.J. Where one executor delivers over assets *60 to Ms coexecutor bonafide, and for a purpose apparently beneficial to the estate, he is not responsible for the cone\-ecutorhlS °°"
*59 The next ground to charge Cotton and Jackson is, that they had the fund in their hands, and permitted it, or rather by their act caused it to pass into the hands of their co-executor; and on that ground they are chargeable ; and a great number of authorities were cited, I will not examine each case, but I think the result of the whole taken together is this: that where one executor lias the fund or evidence of debt in his hands, and he voluntarily and unnecessarily, or without an apparently *60 11 proper motive, permits it to pass into the hands of a co-osecuto}', lie is responsible. For if no proper motive can be assigned, a bad one must be imputed ; as men seldom act without a motive, and if he who best knows will not show it, the presumption is, that it is not a good one. The most charitable motive, which under such . . . circumstances can be assigned, is a desire to avoid responsibility ; which is a liad, or at least not a good one. *■ * ° But where the apparent good of the estate, and I should iU^’ the reasonable convenience.of the executors required, a fund or evidence of a debt may safely change hands ; here the apparent good of the estate, required, that the evidences of debts should be placed in the hands of him, under whose immediate eyes the debtors resided, as a measure of safety to the estate. By attempting to guard the trust fund by unreasonably rigid rules, a contrary effect from the one designed will ho produced. Honest men will be driven from the office; and their place will he supplied by dishonest ones.
These principles also will protect the two executors from loss in taking Mr. Burton’s acknowledgement of purchases made at the Warren sales. The case comes within the meaning and spirit of these principles.
Pee. Cueiam. — Decebe accoedtncíx.y.